# Gould *v.* Atlantic City Railroad Company.

*Negligence—Railroads—Passenger—Weight of testimony—Number of witnesses.*

In an action by a passenger against a railroad company to recover damages for personal injuries, the case is for the jury, and a verdict and judgment for the plaintiff will be sustained, where the testimony of the plaintiff and another passenger shows that the injury was sustained at a junction point where cars were coupled, according to the account of the two witnesses, with "unusual" and "extraordinary" and "terrific" force, and without warning, throwing the plaintiff forward in his seat with such violence as to result in hernia, although twelve witnesses, employees of the defendant and passengers, testified in substance that the coupling was effected without disturbing any other persons in the cars and without unusual violence. In such a case the defendant cannot complain of the trial judge's action in submitting the case to the jury, if it appears that he did not minimize the effect of the numerical preponderance of the witnesses for the defendant, and the legitimate advantage to which the defendant was entitled by reason of this marked numerical preponderance of witnesses. Fornwalt v. Philadelphia R. T. Co., 65 Pa. Superior Ct. 559, distinguished.

Argued Oct. 5, 1917. Appeal, No. 227, Oct. T., 1917, by defendant, from judgment of C. P. No. 2, Philadelphia Co., June T., 1916, No. 297, on verdict for plaintiff in case of Philip Gould v. Atlantic City Railroad Company. Before ORLADY, P. J., HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before ROGERS, J.

The circumstances of the accident are fully detailed in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,200. Defendant appealed.

*Error assigned* was in overruling defendant's motion for judgment n. o. v.

*Wm. Clarke Mason,* for appellant.—There is no presumption in favor of the plaintiff, but if it be contended that the testimony offered by the plaintiff was sufficient to raise a presumption of negligence, this presumption was completely overcome by the testimony offered by the defendant, and as there was no proof in rebuttal on behalf of the plaintiff, the defendant was entitled to binding instructions in its favor.

The evidence offered by the plaintiff as to the happening of the accident shows merely a jolt, with no evidence as to the cause, and no evidence to establish a result from the jolt which would prove negligence on the part of the defendant: Fornwalt v. Philadelphia Rapid Transit Co., 65 Pa. Superior Ct. 559; Levin v. Philadelphia & Reading Ry. Co., 228 Pa. 266; Herstine v. Lehigh Val. R. R. Co., 151 Pa. 244; Rice v. Philadelphia Rapid Transit Co., 214 Pa. 147; Lapinco v. Philadelphia & Reading Ry. Co., 257 Pa. 344.

*Thomas James Meagher,* for appellee.—Under the law of Pennsylvania, a coupling of cars done so violently

and so negligently as to injure a passenger, who is in the exercise of due care, is actionable: Herstine v. Lehigh Valley, Etc., Co., 151 Pa. 244; McCloskey v. Bells Gap R. R. Co., 156 Pa. 254; Rauhley v. West Jersey, Etc., Co., 202 Pa. 43; White v. Columbia, Etc., Ry. Co., 215 Pa. 462; Kleine v. Pittsburgh Rys. Co., 252 Pa. 214.

OPINION BY ORLADY, P. J., December 13, 1917:

The plaintiff, on April 2, 1916, was a regular passenger in a car of the defendant company en route from Cape May to Philadelphia. The train, composed of five cars, stopped at Wildwood Junction, where several other cars were attached to the train. While effecting this coupling, the plaintiff received his injuries, and the exact facts are important in determining the liability of the defendant. There is no suggestion of his contributory negligence, as he was in the place arranged for his occupancy and quietly sitting in a seat in a regular coach. He describes the accident as follows: "The seat in front of me was turned so as to face me and occupied on the window side by a friend named Peterson, who has since died. I was seated on the side next to the aisle, with my elbow on the arm of the seat; we waited for a few minutes at Wildwood Junction when the other cars were attached to our train with such an unusual and extraordinary force, it gave such a crash that I lost my balance and my arm (elbow) lodged into my abdomen, and then I fell forward, and then back on the seat again, and all at once I got a severe fainting pain in the left side of my abdomen; at first it was like an electrical shock, a very sharp pain, then I felt kind of fainting; I suffered pain continually all the time until we came to Camden; I struck against the arm of the seat. Mr. Peterson fell off his seat too. Mr. Clark noticed me and when I got out of the car at Camden he helped me from the car into the ferry; I arrived home by a trolley about eight o'clock; showed the place to my son; I was shook up all the way through; had a black and blue mark on the left hand side

of my abdomen; my son and I walked about a block and a half to our family physician, who examined me and he said I had a hernia; three days later I was operated on in a hospital for the hernia in the left groin, and remained there for four weeks; several months later I was again operated on for the same trouble."

In all the material facts relating to the accident, the plaintiff was corroborated by James U. Clark, who was seated in the second seat in front of him, and stated,—when they coupled or backed into the cars that we were in, they backed in with terrific force, which probably jarred everybody on the train; when asked, what he meant by terrific force, he replied, "Well, it was more of a crash into the cars, than it was a backing into the cars. I took Gould off the train. He seemed to be suffering and he was as white as a ghost and I assisted him to the boat. He was very pale after the jolt." The family physician and the surgeon confirmed the plaintiff's statement as to his injuries, and treatment. Tending to show the plaintiff's good health, he testified that prior thereto, his general health was all right; that he had never been involved in an accident, and never had hernia or rupture. This was supplemented by the testimony of a physician and surgeon who had examined him physically in January, 1914, and in April, 1915, over his entire body, heart, lungs and inguinal region, to comply with certain requirements for admission into a fraternal order, and found no evidence of a hernia or rupture. There is nothing to suggest that the plaintiff's injuries were simulated, or that he was not seriously injured on the defendant's car on April 2, 1916, or that he in any degree contributed to the accident. The words used by witnesses to describe an accident vary largely with their ability and power of explanation, their state of mind, bias or interest, and in determining the extent or degree of violence alleged, it is as important to consider the physical results produced, as well as the reasonably colorable narrative given by the parties and that of observ-

ers. In this case the contradictions in regard to the coupling incident were most marked. Twelve witnesses, employees and passengers, were called by the defendant, and a fair summary of their testimony was that the coupling was effected without disturbing any other persons on the cars, and not with any unusual violence. The trial judge appreciated this natural disposition to exaggerate and minimize such incidents, and to forefend against a mistaken value to be given to either, carefully presented the contention of the parties, with a special analysis of the testimony of the more important witnesses, and stated "I will repeat, that you should bear in mind the marked numerical preponderance of the witnesses in favor of the defendant, and call your attention to the fact that the plaintiff has a great interest here, and that with the exception of a single witness he is unsupported as to the fact of the happening of the accident. As against this, there are the larger number of witnesses who have appeared for the defendant, and you will take that into consideration. There were a number of witnesses employed by the defendant company, whether or not that would affect your verdict, I do not know. That is for you." The charge of the court did not minimize the effect of the numerical preponderance of the witnesses for the defendant, and the legitimate advantage to which the defendant was entitled by reason of this marked numerical preponderance of credible witnesses, as complained of in Holden v. Penna. R. R., 169 Pa. 1; Fineburg v. Second & Third Sts. Pass. Railway Co., 182 Pa. 97; Hodder v. Philadelphia Rapid Transit Co., 217 Pa. 110, and Davies v. Philadelphia Rapid Trans. Co., 228 Pa. 176, but the very opposite instruction was given, and emphasized by specially calling the attention of the jury to the names of the defendant's witnesses, their opportunity for knowing the facts and a summary of their testimony. A motion for a nonsuit was refused, and one for judgment non obstante veredicto. The court could not as a matter of law say that, the positive, direct and

affirmative testimony of the plaintiff, his witness, Clark, the physician who examined him in 1914 and 1915, and the surgeons who operated on him soon after the accident, was entirely discredited by the testimony of the others. It was purely a disputed question of fact, and as such was rightly submitted to the tribunal fixed by the law to decide it. The description given by the plaintiff and the witness Clark, clearly portrayed a coupling made with unusual and unnecessary violence without any warning, and that the direct effect, as applied to the plaintiff, induced a very serious physical injury. As stated in Uffelman v. Philadelphia Rapid Transit Co., 253 Pa. 394, there is no presumption of negligence arising from the use of the words—sudden jerk— and it was incumbent on the plaintiff to show affirmatively that this jerk was not only unexpected, but was unusual and violent, and that the car was carelessly and negligently started with such sudden force and violence as to produce her injuries. The same rule is defined in Levin v. Philadelphia & Reading Railway Co., 228 Pa. 266; Herstine v. Lehigh Valley Railroad Co., 151 Pa. 244; Rice v. Philadelphia Rapid Transit Co., 214 Pa. 147. Whether it was or not an unnecessarily violent coupling was the subject of controversy, and the primary question of fact for the jury to determine, since the plaintiff was left without a cause of action if the coupling was made in a proper manner. In Fornwalt v. Philadelphia R. T. Co., 65 Pa. Superior Ct. 559, we said, "The · question involved is whether this meagre description—a sudden jerk of the car threw me, and I went to protect myself from falling to the floor, struck my hand on the end of the seat and sustained the fracture—of the alleged cause of the accident, the nonliability of the defendant, should be determined by the court on account of inadequacy of proof or be submitted to a jury to have that tribunal decide, whether the words as used by the plaintiff were sufficient to warrant the inference that the movement of the car was negligent." The cases cited by

431, (1917).]          Opinion of the Court.

this appellant were relied on, and we held that there is no presumption of negligence arising from the use of the words—sudden jerk—and it was incumbent on the plaintiff to show affirmatively that the jerk was not only unexpected by her, but was unusual and violent, etc.

The testimony in this case supplies all that was lacking in that one, and the words used have no doubtful meaning in describing an unexpected and violent coupling through the negligence of the defendant's employees, by which the plaintiff was injured.

The judgment is affirmed.